Filed 6/18/26  P. v. Owens CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E084381 |
| v. | (Super.Ct.No. RIF1803626) |
| ROBERT BRIAN OWENS, | OPINION |
| Defendant and Appellant. | |

APPEAL from postconviction orders of the Superior Court of Riverside County. O.G. Magno, Judge.  Affirmed and remanded with directions.

Ariana D'Agostino, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance W. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Caelle Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Robert Brian Owens challenges various aspects of his resentencing under Penal Code section 1172.75.[1] He contends the resentencing court erred by reimposing his original, upper term sentence without applying the changes to section 1170 that limit imposition of an upper term sentence. Defendant further contends that the trial court abused its discretion by denying his request to dismiss his prior strike and prior serious felony convictions and by miscalculating his custody credits. The Attorney General concedes that the trial court failed to calculate actual time credits at resentencing.

We accept the Attorney General's concession on the issue of custody credits and therefore remand the matter with directions for the court to determine the number of days that defendant has spent in actual custody. In all other respects, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

In September 2019, defendant pleaded guilty to one count of residential burglary (§ 459), and admitted to two prison priors (§ 667.5, subd. (b)), a prior strike conviction (§ 667, subds. (b)-(i)), and a prior serious felony conviction (§ 667, subd. (a)). Pursuant to the plea agreement, the trial court imposed a determinate sentence of 19 years in state prison consisting of the upper term of six years for residential burglary, doubled by operation of the admitted prior strike to twelve years, two years for the two prison priors, and five years for the prior serious felony. The remaining charges and allegations were

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

dismissed. Defendant was credited with 415 days actual time and 414 days conduct credit for a total credit of 829 days.

In May 2023, the trial court calendared defendant's case for resentencing pursuant to section 1172.75 because his two prison priors were invalidated by a change in law. There were two substantive section 1172.75 hearings in July 2024. During the first hearing on July 26, 2024, the court indicated to the parties that it believed "the upper term with [*sic*] the admission of a prior strike was appropriate, which is 12 years." The court explained that this would take into account (1) removing two one-year prison priors; and (2) dismissing the five-year prior serious felony based on remoteness "if there was no other criminal conduct" from 2005 to 2019 other than the 1999 and 2005 prior strikes. The court then continued the hearing for the prosecution to file an opposition with more information.

During the second hearing on July 29, 2024, the court indicated it had reviewed defendant's resentencing and supplemental resentencing briefs and the prosecution's opposition. In requesting a middle or low term sentence for burglary, defendant's briefs expounded in detail postconviction factors such as his discipline record, rehabilitation efforts, and other factors showing that incarceration is unnecessary in the interest of justice. The briefs also discussed the age of the prior serious felony conviction, discipline and rehabilitation efforts, and defendant's nonviolent criminal history for the court to consider dismissing the prior serious felony. The nature and circumstances of the offense, remoteness of the prior strike conviction, and defendant's background, character

and prospects were also argued for the court to consider dismissal of a prior strike. The prosecution's opposition included detailed information regarding defendant's criminal history and multiple violations of community supervision, as well as a victim statement explaining the deleterious physical and emotional impact the burglary had on the victim and his family. Both parties noted in describing the nature of the offense that after defendant fled upon confrontation during the burglary, the victim discovered on the driveway a chalk drawing of a box with the word "Knock" and a note inside the refrigerator stating, "Never outshine the master" and "Knock."

The court reminded the parties that when it gave an indicated sentence of 12 years imprisonment during the first resentencing hearing, it "did not have the full facts of the circumstances of the first-degree burglary" and defendant's "full criminal history." Based on the additional information in the briefs, however, the court stated it intended to impose a 17-year sentence instead:

"Mr. Owens in 2013 was convicted of a felony; served 44 months in prison. In 2016, a misdemeanor 417(a). And then there was one, two, three, four, while he was on supervision, for post-release supervision, that he [] violated four times. Post-release supervision from 2018; had a conviction for what appears to be a felony vandalism, and, again, was given post-release community supervision, and that was violated wherein he served six months. So given that information, it appears that Mr. Owens had a continuing criminal activity, and so my tentative—I would reverse myself,

4

and my tentative is to still impose the five-year prison prior, which would give Mr. Owens a 17-year sentence . . . ."

The court then turned to defense counsel for any comments regarding the new indicated sentence. Defense counsel replied by reiterating the legal and factual arguments contained in his briefs, including the various mitigating factors and circumstances he sought the court to consider in support of his requests.. In response, the court further discussed its sentencing rationale:

"[O]ne of the things that I also have considered but I did not state was the fact that I know new law has indicated that the Court has the ability or must consider the defendant's performance while he is in prison. I did not hear anything prior to that, until you had mentioned it . . . [s]o my assumption was that Mr. Owens had rather performed well while he's in custody. But you indicated he actually has some rules violations, nonviolent, nonetheless, but it's a matter that I have considered in giving an indicated essentially for 15 years. As in terms to why the upper term, I look at the circumstances of the offense, the conduct that Mr. Owens did in committing the first-degree burglary. And, again, the currency of such conduct after he was just recently sentenced to, [*sic*], a prison term, although he was given parole supervision or . . . community supervision. But, anyhow, after hearing from you, my indicated will remain the same."

The prosecution thereafter summarized defendant's criminal history as discussed in its opposition, emphasizing that crimes in which defendant suffered convictions were "all crimes that involve a victim, whether it was a vandalism, an animal cruelty, and brandishing the weapon." As for the facts underlying the burglary charge, the prosecution acknowledged that "it was not the most egregious fact pattern, but from the victim impact statement, . . . the whole family has uplifted and moved to another house since this incident." Finally, the prosecution summarized, "[defendant's] criminal history between his most recent strike from 2005 to the case at issue shows that the defendant had no intentions to obey the law and the orders before it."

After considering all arguments presented in the briefs and during the resentencing hearings, the court dismissed the two prison prior terms as legally invalid pursuant to section 1172.75, subdivision (a). The court then resentenced defendant to a total determinate sentence of 17 years in state prison, composed of the upper term of six years for the residential burglary conviction, doubled to 12 years pursuant the prior strike conviction, plus five years for the prior serious felony conviction.

## II. DISCUSSION

### A. Resentencing under Section 1172.75

Section 1172.75 retroactively invalidates prison prior enhancements (former § 667.5, subd. (b)) for non-sexually violent offenses imposed prior to January 1, 2020, and requires the recall and resentencing of defendants whose judgments include those invalidated prison priors. (§ 1172.75, subds. (a), (c).) Section 1172.75 also directs the

resentencing court to "apply any other changes in law that reduce sentences" (*id.*, subd. (d)(2)), consider various postconviction factors and evidence affecting the need for continued incarceration (*id.*, subd. (d)(3)), and impose a sentence no greater than originally imposed "unless there is clear and convincing evidence that imposing a lesser sentence would endanger public safety" (*id.*, subd. (d)(1)).

In a resentencing proceeding under section 1172.75, we review the court's sentencing decisions for abuse of discretion. (*People v. Mathis* (2025) 111 Cal.App.5th 359, 366, review granted Aug. 13, 2025, S291628 (*Mathis*); *People v. Dozier* (2025) 116 Cal.App.5th 700,709, review granted Feb. 11, 2026, S294597 (*Dozier*); *People v. Garcia* (2024) 101 Cal.App.5th 848, 855-856; *People v. Moseley* (2024) 105 Cal.App.5th 870, 874.) However, questions of law involving statutory interpretation are reviewed de novo. (*People v. Superior Court* (*Guevara*) (2025) 18 Cal.5th 838, 856; *Mathis*, *supra*, at p. 366; *People v. Braden* (2023) 14 Cal.5th 791, 804.)

## B.      No Error in Reimposing Original Upper Term Sentence

Defendant contends the court imposed his upper term sentence without a stipulation or a jury verdict to support the aggravating factors as required under the recent amendments to section 1170. As we explain, the factfinding requirement does not apply to section 1172.75 resentencing proceedings because defendant was originally sentenced to the upper term and the court reimposed that upper term sentence at his resentencing.

Effective January 1, 2022, Senate Bill No. 567 amended section 1170, subdivision (b), to make the middle term the presumptive determinate sentence. (*People v. Lynch*

7

(2024) 16 Cal.5th 730, 742 (*Lynch*).) Section 1170, subdivision (b)(2), permits imposing the upper term "only when there are circumstances in aggravation of the crime that justify the imposition of a term . . . exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  (§ 1170, subd. (b)(2).)

> Critically, section 1172.75, subdivision (d)(4) (§ 1172.75(d)(4)) provides: "*Unless the court originally imposed the upper term*, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  (§ 1172.75(d)(4), italics added.)

Our appellate courts have addressed the meaning of this provision in connection with the new factfinding requirement in section 1170.  Parties urge this Court to follow their respective positions based on the presently divided interpretations by the appellate courts.  Our Supreme Court is currently reviewing these divided interpretations in *People v. Eaton* (Mar. 14, 2025, C096853) [nonpub. opn.], review granted May 14, 2025, S289903.

8

Defendant urges this Court to follow *People v. Gonzalez* (2024) 107 Cal.App.5th 312 (*Gonzalez*) for the proposition that § 1172.75(d)(4) should be read as a *restriction* and not an *exemption*, such that only those who previously received the upper term where the aggravated factors were stipulated to or were proven beyond a reasonable doubt to the trier of fact can receive the upper term at resentencing. *Gonzalez* is the only published opinion thus far endorsing this interpretation with which we disagree.

We agree with the majority of the cases that construe § 1172.75(d)(4) as an exemption or exception permitting resentencing courts to reimpose the original upper term sentences without a stipulation or a jury finding of aggravated circumstances. (*Dozier*, *supra*, 116 Cal.App.5th at p. 713; *Mathis*, *supra*, 111 Cal.App.5th at pp. 373-374; *People v. Brannon-Thompson* (2024) 104 Cal.App.5th 455, 458 (*Brannon-Thompson*).) As such, the factfinding requirements in § 1172.75(d)(4) "apply only if the trial court is imposing the upper term for the first time at a section 1172.75 resentencing." (*Brannon-Thompson*, *supra*, at pp. 466-467.)

A fundamental task in interpreting statutes " ' " 'is to determine the Legislature's intent so as to effectuate the law's purpose.' " ' " (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.) If the words in the statute are unambiguous, " 'we presume the Legislature meant what it said, and the statute's plain meaning governs.' " (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 837–838; *People v. Cody* (2023) 92 Cal.App.5th 87, 101.)

9

The first clause of § 1172.75(d)(4)—"Unless the court originally imposed the upper term"—provides a clear and unambiguous exception to the second clause requirement that aggravated facts be stipulated or proven for imposition of upper term sentences at resentencing. (*Mathis*, *supra*, 111 Cal.App.5th at p. 374; *Brannon-Thompson*, *supra*, 104 Cal.App.5th at pp. 466–467.) The *Gonzalez* court "acknowledge[d] that the plain language of section 1172.75, subdivision (d)(4), on its face, could be interpreted as not requiring proof of aggravating factors before reimposing an upper term sentence," yet concluded otherwise. (*Gonzalez*, *supra*, 107 Cal.App.5th at pp. 328-329.) We join the cases in line with *Dozier, Mathis,* and *Brannon-Thompson* and conclude that § 1172.75(d)(4) clearly and unambiguously expresses "the Legislature's intent that the new, heightened factfinding requirements for aggravating factors do not apply where the defendant was originally, lawfully sentenced to an upper term." (*Mathis*, at p. 374.)

Moreover, we agree with the *Mathis* court that the Sixth Amendment is not implicated here. Defendant was originally sentenced to an upper term in 2019 when former section 1170 eliminated the middle term as the presumptive term and gave courts "broad discretion" to impose any term within the triad based on interests of justice. (*Lynch*, *supra*, 16 Cal.5th at p. 747; *Mathis*, *supra*, 111 Cal.App.5th at p. 371.) This statutory scheme was one that " 'everyone agrees,' encounters no Sixth Amendment shoal" because imposition of upper term sentences was authorized without any additional

10

factfinding. (See *Cunningham v. California* (2007) 549 U.S. 270, 293-294; *Lynch*, at pp. 747-748; *Mathis*, at pp. 371, 373-374.)

Defendant argues in his reply that the court nevertheless violated the Sixth Amendment because it relied on additional factors at resentencing to support the upper term such as his criminal history and nature of the offense. This argument is unavailing as it is based on an unsupported and strained interpretation of *Brannon-Thompson* as requiring resentencing courts to find that *either* the upper term was previously imposed *or* the aggravating factors must be established beyond a reasonable doubt.

## C.     No Error in Declining to Dismiss Prior Serious Felony and Strike Convictions

Defendant asserts that "the trial court's failure to strike the serious felony prior or the strike prior constitutes error because the court misunderstood the section 1385 inquiry and failed to give due weight to relevant, credible evidence that showed dismissal would not endanger public safety and would be in the furtherance of justice."

The Attorney General argues defendant forfeited this argument by failing to raise it in the trial court. We need not decide the issue, because even if defendant did forfeit the argument, we would exercise our discretion to reach its merits.[2]  (*People v. Smith* (2003) 31 Cal.4th 1207, 1215 [appellate court has discretion to reach forfeited claims].)

### 1.  *Prior Serious Felony Conviction*

Defendant contends that the trial court abused its discretion because it did not "engage in the holistic balancing test considering both mitigating and aggravating

---

[2] Because we reject defendant's claim of error, his claim of ineffective assistance of counsel necessarily fails.

factors" as required under section 1385, subdivision (a). Specifically, he asserts that his "prior criminal history was given disproportionate and undue weight considering the overwhelming evidence that dismissal of the serious felony prior would further justice and not endanger public safety." He further asserts that he "produced credible evidence directly probative on his rehabilitation and establishing he would not endanger public safety when released[,]" but that the trial court "gave no rationale as to why it declined to strike . . . the serious felony enhancement" and only provided "scant analysis ignor[ing] highly relevant evidence."

Effective January 1, 2022, section 1385, subdivision (c)(1) provides that a trial court "shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." (§ 1385, subd. (c)(1).) "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant" to prove one of nine enumerated mitigating circumstances. (§ 1385, subd. (c)(2).) "Proof of the presence of one or more of these [mitigating] circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (*Ibid*.) The term " '[e]ndanger public safety' " is defined as "a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (*Ibid.*)

"Stated simply, if the court does not conclude that dismissal would endanger public safety, then mitigating circumstances strongly favor dismissing the enhancement.

12

But ultimately, the court must determine whether dismissal is in furtherance of justice. This means that, absent a danger to public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*People v. Walker* (2024) 16 Cal.5th 1024, 1036 (*Walker*), citing *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1098 (*Ortiz*).) A trial court must "engage[ ] in a holistic balancing with special emphasis on the enumerated mitigating factors" which weigh "strongly in favor of . . . dismissal." (*Ortiz*, *supra*, at p. 1096.)

"[T]he specification of mandatory factors did not displace the trial court's obligation to exercise discretion in assessing whether dismissal is 'in furtherance of justice.' " (*Ortiz*, *supra*, 87 Cal.App.5th at p. 1093, citing § 1385, subd. (c)(1)-(2).) "The plain language of section 1385(c)(2) contemplates the trial court's exercise of sentencing discretion, even as it mandates that the court give 'great weight' to evidence of enumerated factors." (*Ortiz*, at p. 1096.) "[T]he ultimate question before the trial court remains whether it is in the furtherance of justice to dismiss an enhancement." (*Id.* at p. 1098.)

" '[G]enerally applicable sentencing principles' relevant to a court's determination of whether dismissal is in furtherance of justice 'relat[e] to matters such as the defendant's background, character, and prospects.' [Citation.] Those principles require

13

consideration of circumstances in mitigation (and aggravation) in the broader context of the recognized objectives of sentencing, which are not limited to public safety." (*Ortiz*, *supra*, 87 Cal.App.5th at p. 1097.)

Here, the record supports that the trial court balanced the mitigating and aggravating factors and ultimately found that dismissing the prior serious felony would be contrary to furthering justice. Defendant's resentencing briefs detail the mitigating circumstances—age of the prior serious felony conviction, nature of the offenses and rule violations and their impact on public safety, and rehabilitation and reentry efforts—all of which were reiterated during the resentencing hearing. Although the trial court did not expressly discuss each of the mitigating factors, it indicated that it reviewed defendant's resentencing briefs filed a month prior and issued a tentative sentence dismissing the prior serious felony, noting that it had limited knowledge of defendant's criminal history at the time.

At the continued resentencing hearing, after reviewing the prosecution's opposition, the trial court relayed that contrary to its initial assessment, defendant's convictions were not remote in time. Rather, defendant's criminal history showed a "continuing criminal activity" as evidenced by two additional convictions in 2013 and 2016. The court noted multiple violations of post-release supervision resulting in additional jail time almost immediately after a long 44-month prison term. It also noted defendant's postconviction conduct, namely, his "performance while he is in prison" and

stated that it had "assum[ed] . . . [defendant] performed well while he's in custody" until it learned of "some rules violations," albeit nonviolent in nature.

The court recognized the circumstances of the current burglary offense when it referred to the victim statement submitted by the prosecution with its opposition. While the prosecution described the current offense as "not the most egregious fact pattern," it highlighted a portion of the victim statement explaining that "the whole family has uplifted and moved to another house since this incident." Briefs by both parties also described an unusual set of circumstances that implicated public safety concerns; after being confronted by the victim during the burglary, defendant fled leaving eerie and potentially threatening notes on the driveway and in the refrigerator stating "Knock" and "Never outshine the master." The court also noted, as the prosecution argued, that defendant's convictions were "all crimes that involve a victim, whether it was vandalism, an animal cruelty, and brandishing the weapon."

Ultimately, the court explained that defendant's "continuing criminal activity," including his postconviction conduct, led to its decision not to dismiss the prior serious felony. Although the trial court did not explicitly make a finding that dismissal would endanger public safety, we can reasonably infer such a finding based on its rationale to not dismiss. Even if there was no public safety concern, the record supports that the trial court considered the "continuing criminal activity," the nature of the underlying offense, and postconviction conduct including multiple rule violations as "substantial, credible evidence of countervailing factors" that "neutralized" or outweighed the "great weight of

the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice." (*Walker*, *supra*, 16 Cal.5th at p. 1036, citing *Ortiz, supra*, 87 Cal.App.5th at p. 1098.)

In claiming the trial court failed to give due weight to the mitigating factors on appeal, defendant fundamentally asks us to reweigh them. We decline to do so as defendant has failed to make a showing that the trial court's statutorily vested discretionary sentencing decision was made in " ' " 'an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298, citing *People v. Jefferson* (2016) 1 Cal.App.5th 235, 242-243, *People v. Carmony* (2004) 33 Cal.4th 367, 376-377 (*Carmony*).) The trial court is therefore " ' "presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." [Citations.]' " (*Carmony*, *supra*, at pp. 376-377.) Accordingly, we find no abuse of discretion here.

2. *Prior Strike Conviction*

Defendant likewise argues that the court abused its discretion by "merely considering [defendant's] criminal history . . . [and not] the particulars of [his] background, character, and prospects" when it denied his *Romero* motion.

A trial court may consider a new *Romero* motion to dismiss prior strikes " 'in furtherance of justice' " pursuant to section 1385, subdivision (a), during a "full resentencing" under section 1172.75. (*People v. Rogers* (2025) 108 Cal.App.5th 340,

16

361-364; *People v. Dain* (2025) 18 Cal.5th 246, 252.) In so doing, the trial court must consider "whether, in light of the nature and circumstances of his present felonies and [prior strikes], and the particulars of his background, character, and prospects, the defendant may be deemed outside" the spirit of the three strikes law "in whole or in part." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) Circumstances must be " 'extraordinary' " for a defendant to fall outside the spirit of the three strikes law. (*Carmony*, *supra*, 33 Cal.4th at p. 378.)

A trial court's failure to dismiss a strike allegation pursuant to a *Romero* motion under section 1385, subdivision (a), is reviewed for abuse of discretion. (*Carmony, supra*, 33 Cal.4th at p. 374.) The three strikes law establishes sentencing norms and limits the court's ability to depart from this norm by requiring explicit justification for any departure. (*Id.* at p. 378.) This "creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*Ibid*.)

Given this presumption, abuse of discretion will occur in only limited circumstances, such as when the trial court was unaware of its discretion to dismiss or considered impermissible factors in declining to dismiss. (*Carmony*, *supra*, 33 Cal.4th at p. 378 [citations omitted].) A trial court abuses its discretion if it fails to dismiss a prior strike based on reasons that are "so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.) " 'In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary

17

determination to impose a particular sentence will not be set aside on review.' " (*Id.* at pp. 376-377 [citations omitted].)

In declining to dismiss the prior strike, the court here considered the same factors as it did for determining whether to dismiss the prior serious felony as discussed above. The court does not explicitly state as such, but the record reasonably indicates that the same factors were considered in determining whether to dismiss the prior serious felony and/or the prior strike. Both parties make their respective arguments on appeal under such premise. Again, the court considered defendant's criminal history reflecting his "continuing criminal activity" which belied remoteness. In considering defendant's postconviction conduct, the trial court noted his multiple release term violations. It considered the nature of the offense and the seriousness of the underlying crime in conjunction with the victim statements as reiterated by the prosecution. The court also indicated it considered the parties' briefings and heard their arguments during the resentencing hearings where defendant details the mitigating circumstances including the nature and age of his convictions, rule violations characterized as nonviolent and minor, and his rehabilitative and reentry efforts.

The court did not explicitly discuss *all* factors and circumstances raised by the parties, but the record is absent any affirmative showing that the court failed to consider "the particulars of [his] background, character, and prospects" as defendant claims or that it was unaware of its discretion. "In the absence of evidence to the contrary, we presume

18

that the trial court considered all of the relevant factors and properly applied the law." (*People v. Brugman* (2021) 62 Cal.App.5th 608, 638.)

While asserting that the trial court "merely" considered his criminal history, defendant fails to explain how any of the other factors present an "extraordinary" circumstance such that the trial court would be obliged to dismiss his prior strike in furtherance of justice. There is no showing that the trial court's decision to uphold the prior strike was "so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, *supra*, 33 Cal.4th at p. 377.) Thus, the trial court did not abuse its discretion by declining to dismiss the prior strike.

## C. Custody Credits

We agree with the parties that defendant's actual custody credits should have been calculated and updated at the resentencing hearing.

Upon resentencing that results in a "modification of a felony sentence during the term of imprisonment, the trial court must calculate the actual time the defendant has already served and credit that time against the 'subsequent sentence.' " (*People v. Buckhalter* (2001) 26 Cal.4th 20, 23 (italics omitted); § 2900.1.) "It is the duty of the court imposing the sentence to determine the date or dates of any admission to, and release from, custody prior to sentencing and the total number of days to be credited pursuant to this section. The total number of days to be credited shall be contained in the abstract of judgment." (§ 2900.5, subd. (d).)

At the conclusion of the resentencing hearing, the court awarded a total credit of 829 days consisting of 415 actual credits and 414 conduct credits—the same actual and conduct credits calculated at defendant's original sentencing five years ago. The court then deferred calculation of credits to the probation department for "the full amount of credits that he has owed today . . . . [W]e're just asking help from probation to calculate the credits in county time, state prison time, and then with the credits he gets because I'm at a loss as to what that is and I don't want to shortchange Mr. Owens." The record, however, is absent any information on whether a probation report with updated calculations was submitted and whether the court ultimately issued the correct credits. We therefore remand for the court to determine the required recalculation.

**DISPOSITION**

The matter is remanded to the trial court to recalculate defendant's custody credits for actual time served as of the July 29, 2024, resentencing date and to prepare an amended abstract of judgment and forward it to the California Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

LEE
                                                                                                    J.

We concur:

RAMIREZ
                        P. J.
RAPHAEL
            J.

21